# EXHIBIT A



# TABLE OF CONTENTS

|  |  |  |
|---|---|---|
| | Background | 1 |
| Section 1. | Grant of License | 1 |
| Section 2. | Term | 2 |
| Section 3. | Location and Lease | 2 |
| Section 4. | Training and Commencement of Business | 3 |
| Section 5. | Services Rendered by COTTMAN | 4 |
| Section 6. | Operator=s Manual | 4 |
| Section 7. | Certain Obligations of OPERATOR | 5 |
| Section 8. | Continuing License Fees | 6 |
| Section 9. | Advertising | 7 |
| Section 10. | Insurance | 8 |
| Section 11. | COTTMAN Names and Marks and Trade Secrets | 8 |
| Section 12. | Protection of SYSTEM | 9 |
| Section 13. | Customer Warranties | 9 |
| Section 14. | Telephone Service | 9 |
| Section 15. | Signs | 9 |
| Section 16. | National Fleet Accounts | 10 |
| Section 17. | Restrictions on Change of Ownership | 10 |
| Section 18. | Relationship of the Parties; Indemnification | 12 |
| Section 19. | Termination | 12 |
| Section 20. | Effect of Termination | 13 |
| Section 21. | Covenant Not to Compete | 14 |
| Section 22. | Arbitration | 15 |
| Section 23. | Expenses | 15 |
| Section 24. | Waiver | 16 |
| Section 25. | Successors | 16 |
| Section 26. | Notice | 16 |
| Section 27. | Risk of Operations | 16 |
| Section 28. | Severability | 16 |
| Section 29. | Jurisdiction, Venue and Controlling Law | 16 |
| Section 30. | JURY WAIVER | 17 |
| Section 31. | Entire Agreement | 17 |



✓ New                          Conversion

Elite                          Champion

# License Agreement

AGREEMENT made *October 28*, 200*2* between COTTMAN TRANSMISSION SYSTEMS, LLC., 240 New York Drive, Fort Washington, Pennsylvania 19034 (hereinafter called "COTTMAN"), and

James R. Wolfsgruber
6576 35th Place
Vero Beach, FL  32966

(hereinafter called "OPERATOR")

As a result of extensive experience in the automotive transmission business, COTTMAN has developed and perfected certain methods, procedures and techniques of repairing, remanufacturing and servicing transmissions; and

COTTMAN has developed a system (hereinafter called the "SYSTEM") for conducting operations in the automotive transmission business which consists, in part, of the use of the Cottman name, Cottman's methods, procedures and techniques, and a network of Centers devoted exclusively to the repair of automotive transmissions (hereinafter called "CENTERS") which use the Cottman name and said methods, procedures and techniques; and

COTTMAN has created a substantial demand for its products and services by maintaining high standards of quality in its operations and in the operations of its licensed CENTERS and by extensive advertising; and

COTTMAN is actively engaged in promoting and expanding the reputation and good will of the name COTTMAN in connection with the automotive transmission business; and

In recognition of the value of participating in the SYSTEM, OPERATOR desires to acquire a license to operate a CENTER;

THEREFORE, in consideration of the mutual promises contained herein and intending to be legally bound, the parties agree as follows:

1. Grant of License.

a.  In consideration of the payment of the initial fees, as set forth in Appendix A attached hereto and made a part hereof, OPERATOR shall have the right, subject to the terms and conditions set forth in this Agreement, to operate a CENTER (hereinafter called "the CENTER"), under the Cottman name and under any other trade names, trademarks, service marks and logos (hereinafter called "Cottman names and marks") presently used, or which may hereafter be used in the SYSTEM;

i

b.  Operator's Center shall be located within the following area.

Florida

S.M.S.A./COUNTY

The Center may not be relocated without the express prior written approval of Cottman, which approval shall not be unreasonably withheld.

i.  Cottman reserves the right to establish other Centers within the same Standard Metropolitan Statistical Area or County. The number of Centers, however, shall not exceed one Center for each 50,000 motor vehicle registrations in the above named area. In areas which are not designated within a statistical metropolitan area, Cottman shall not establish another Center within a three mile radius of the Operator's Center.

c.  This paragraph shall apply to New Licensees, Converting Individuals or Converting Groups.  OPERATOR acknowledges that Cottman shall incur expenses upon execution of this Agreement, and in the event of any termination or cancellation of this Agreement for any reason whatsoever, COTTMAN in addition to any other rights or remedies it may have shall be entitled to retain the entire initial license fee as liquidated damages.

d.  This paragraph shall apply to Elite License Agreements. In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, either COTTMAN or OPERATOR shall have the right to cancel and terminate this Agreement by giving thirty (30) days' written notice to the other.  Upon any such cancellation or termination pursuant to this Section 1.c., OPERATOR shall be entitled to receive a refund of all deposit monies paid to COTTMAN, minus all expenses incurred by COTTMAN.

e.  This paragraph shall apply only to Champion License Agreements. In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, either COTTMAN or OPERATOR shall have the right to cancel and terminate this Agreement by giving thirty (30) days' written notice to the other.  Upon any such cancellation or termination pursuant to this Section, OPERATOR shall be entitled to receive a refund of all deposit monies paid to COTTMAN, minus all expenses incurred by COTTMAN.

2.  Term.

This Agreement shall be for an initial term of fifteen (15) years. Provided OPERATOR is not then in default under this Agreement, OPERATOR shall have the right to renew this Agreement at the end of the initial term or any renewal term for an additional fifteen (15) year term by executing, at least ninety (90) days, but not more than one (1) year, prior to the expiration of the then current term, COTTMAN's then current standard License Agreement. There shall be no additional initial license fee payable upon renewal. The rate of continuing license fee, as described in Section 8, to be paid by OPERATOR to COTTMAN during any renewal period shall not be more than the rate of continuing license fee payable under the then expiring agreement unless during the term of the then expiring agreement the laws and other rules and regulations under which COTTMAN operates have been modified to require COTTMAN to provide additional goods or services to OPERATOR or to otherwise increase COTTMAN's cost of operating or unless COTTMAN is, in fact, providing additional goods or services to OPERATOR. If, at least ninety (90) days prior to the expiration of the then current term of this Agreement, OPERATOR has not executed COTTMAN's then current standard License Agreement, this Agreement shall automatically terminate at the end of the term without further action by either party. Anything contained in this section 2 to the contrary notwithstanding the initial term of this Agreement and all renewal terms shall be subject to the other provisions of this Agreement relating to termination.

v.  Location and Lease.

a.  This paragraph shall apply to New Licensees, Converting Individuals or Converting Groups.  Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual.  In the event OPERATOR fails to open his CENTER for business within one year from the date of execution hereof, COTTMAN, in its sole discretion, and absent any extension of time agreed to in writing by COTTMAN, may immediately and without prior notice, cancel and terminate this Agreement.

2

b. This paragraph shall apply only to Elite License Agreements. Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual. In the event such a location is not secured within one year from the date of this Agreement, either COTTMAN or OPERATOR shall be entitled to terminate this License Agreement by giving thirty (30) days written notice to the other party, and OPERATOR shall receive a refund of all deposit monies paid to COTTMAN, less all expenses incurred by COTTMAN as a result of this Agreement.

vi. This paragraph shall apply only to Champion License Agreements. Upon the execution of this Agreement, OPERATOR shall proceed with due diligence to secure a location for the CENTER within the Standard Metropolitan Statistical Area or County stated in Section 1.b. of this Agreement, in accordance with the guidelines set forth in COTTMAN's Center Opening Procedures Manual. In the event such a location is not secured within one year from the date of this Agreement,, either COTTMAN or OPERATOR shall be entitled to terminate this License Agreement by giving thirty (30) days written notice to the other party, and OPERATOR shall receive a refund of all deposit monies paid to COTTMAN, less all expenses incurred by COTTMAN as a result of this Agreement.

d. OPERATOR shall not execute any documents of purchase or lease for any such location without the prior written approval of COTTMAN as to location and terms of sale in the event of purchase, or as to the lease and location in the event of lease.

e. In the event OPERATOR purchases the CENTER location at any time during the term of this Agreement, or is the owner of the Center location prior to the execution of this AGREEMENT, OPERATOR does hereby grant to COTTMAN the option to lease the said location on substantially the same terms and conditions contained in any lease under which OPERATOR occupied the location as lessee, or if no such lease existed, then on terms and conditions which are commercially reasonable. The option herein granted may be exercised by COTTMAN for a period of thirty (30) days following the termination of this Agreement for any reason whatsoever.

f. In the event of lease, upon COTTMAN's written approval of the proposed location and lease, OPERATOR shall execute the lease and deliver a copy of the fully executed lease to COTTMAN. The lease shall contain a conditional assignment clause which shall provide that upon the termination of this Agreement, for any reason whatsoever, COTTMAN shall have the option for thirty (30) days to assume the obligations of and to replace OPERATOR as the lessee under said lease and at any time thereafter reassign the lease to a new OPERATOR. OPERATOR agrees not to terminate, renew or in any way alter or amend such lease during the term thereof, or any renewal term thereof, without COTTMAN's prior written consent, and any attempted termination, renewal, alteration or amendment shall be null and void and have no effect as to COTTMAN or COTTMAN's interests.

g. Except as otherwise provided in this Agreement, OPERATOR shall not assign its lease or sublet the CENTER, or any portion of the premises containing the CENTER.

h. In the event OPERATOR chooses to design and construct his CENTER, OPERATOR shall engage COTTMAN's designated design and construction professional or, alternatively, procure design and construction services from another source approved by COTTMAN in writing and provided OPERATOR pays for and submits to a compliance audit by COTTMAN's designated design professional to assure compliance with COTTMAN's standards.

vii. Training and Commencement of Business.

a. Prior to opening the CENTER for business, OPERATOR shall attend COTTMAN's training program and complete the course to COTTMAN's satisfaction. During the training program, OPERATOR shall receive instruction, training and education in the operation of the CENTER. In the event OPERATOR fails to complete training to COTTMAN's satisfaction, COTTMAN, in its sole discretion, may terminate this Agreement immediately, and this Agreement shall be of no further force and effect, and neither COTTMAN nor OPERATOR shall have any further liability or obligation to the other, provided however, that the provisions of paragraphs 19 and 20 hereof shall not be affected by any such termination.

viii. OPERATOR shall attend such additional training programs or meetings at such locations as COTTMAN may from time to time direct. All expenses of OPERATOR incurred in connection with attendance at training programs or sales meetings other than the initial training program shall be borne solely by OPERATOR.

3

OPERATOR shall maintain at all times during the term of this Agreement or any renewal thereof, a staff of trained employees sufficient to operate the CENTER in accordance with this Agreement. OPERATOR shall not employ any person who may be required by COTTMAN to complete a training program but who fails to do so for any reason whatsoever.

### 5. Services Rendered by COTTMAN

COTTMAN agrees to:

a. assist OPERATOR in obtaining a location and negotiating a lease;

b. assist OPERATOR with the layout of the CENTER and the installation of equipment;

c. assist OPERATOR in finding and evaluating personnel;

d. furnish to OPERATOR the Operator's Manual described in section 6, parts catalogs, and instructional and training materials for the purpose of providing guidance in the methods, procedures and techniques of operating a CENTER;

e. furnish from time to time such business information and literature as COTTMAN determines may be helpful in improving the operations of the CENTER;

f. advise and consult with OPERATOR during normal business hours on matters relating to all operations of the CENTER;

g. advise OPERATOR of new developments and improvements in the SYSTEM and to offer to OPERATOR services, facilities, rights and privileges substantially similar to those generally offered to other licensed participants in the SYSTEM;

h. provide initial training and additional training programs and meetings; and

i. continue to develop, promote and protect the good will and reputation associated with the Cottman names and marks and other distinguishing aspects of the SYSTEM.

### 6. Operator's Manual.

a. COTTMAN shall lend to OPERATOR a manual published by COTTMAN (herein called the "Operator's Manual") which includes, in part, the business procedures, technical advice and rules and regulations for the operation of the CENTER.

b. OPERATOR acknowledges and agrees that:

ix. the Operator's Manual is the property of COTTMAN and shall remain its property during the term of this Agreement and any renewal hereof;

x. the Operator's Manual contains confidential information which OPERATOR will protect as a trade secret, and that its loss will cause substantial damage to COTTMAN and the SYSTEM although the amount of such loss would be incalculable with any degree of accuracy. Consequently, in the event of loss of this Manual, OPERATOR agrees to pay to COTTMAN such sum as may be agreed upon for its replacement, as liquidated damages and not as a penalty;

iii. OPERATOR will not reprint or reproduce any portion of the Operator's Manual for any reason whatsoever;

iv. upon termination of this Agreement for any reason the Operator's Manual will be immediately returned to COTTMAN.

c. COTTMAN may add to or otherwise modify the Operator's Manual, from time to time, whenever COTTMAN considers such additions or modifications desirable to improve or maintain the standards of the SYSTEM and the efficient operation thereof, or to protect or maintain the good will associated with the Cottman names and marks or to meet competition.

d. From the date of the opening of the Center by OPERATOR, the provisions of the Operator's Manual as modified from time to time and the mandatory specifications, standards and operating procedures prescribed by COTTMAN and communicated to OPERATOR in writing, shall constitute provisions of

4

this Agreement as if fully set forth herein. All references herein to this Agreement shall include the provisions of the Operator's Manual and all such mandatory specifications, standards and operating procedures.

7.  Certain Obligations of OPERATOR.

In order to maintain the high quality and uniform standards associated with the SYSTEM and to protect its good will and reputation, OPERATOR agrees to:

a.  deal fairly and honestly with the public or with COTTMAN;

b.  honor and comply with the terms of all advertising placed by or at the direction of COTTMAN or OPERATOR;

c.  devote his best efforts and full and exclusive time to the day-to-day operations and development of the license and the business of the CENTER;

d.  operate the CENTER exclusively as an automotive transmission business and engage in no other type of business at the CENTER;

e.  keep the CENTER open for business the minimum number of days per week and hours per day prescribed by COTTMAN from time to time;

f.  keep and maintain the CENTER and its appearance in a clean and orderly manner consistent with the operation of a first class automotive business and the directives of COTTMAN deemed by it to be necessary to protect the standards of quality and uniformity of the CENTERS and the SYSTEM;

g.  operate the CENTER in accordance with the methods, procedures and techniques included in the Operator's Manual as modified from time to time or otherwise directed or approved by COTTMAN;

h.  comply at all times with all federal, state, provincial, county, city and other local laws, regulations and ordinances;

i.  maintain at all times (except when fire or other casualty so prevents) sufficient supplies and personnel to operate the CENTER at maximum capacity and efficiency;

j.  register the fictitious name "Cottman Transmission Center" in accordance with applicable local, state or provincial laws and operate the CENTER under the name COTTMAN and under no other name, and use and display the Cottman names and marks prominently in such manner as may from time to time be directed in writing by COTTMAN and not use or prominently display any other trade name, trademark, service mark or other designation during the term of this Agreement;

k.  permit COTTMAN during business hours to inspect the premises of the CENTER, confer with OPERATOR and OPERATOR's employees and customers, check inventories, methods, books and records, and perform any other inspection deemed by COTTMAN to be necessary to protect the standards of quality and uniformity of the SYSTEM and OPERATOR's performance under this Agreement;

l.  submit to COTTMAN uniform reports and financial statements in accordance with the procedure set forth in the Operator's Manual, and deliver a copy of OPERATOR's federal income tax return relating to the operations of the CENTER within thirty (30) days after such return is filed. In the event COTTMAN adopts as part of the SYSTEM a format of reporting via electronic polling, OPERATOR agrees to submit his uniform reports through the internet or other electronic means which is compatible with software utilized by COTTMAN for such purpose;

m.  maintain a system of bookkeeping and record keeping approved by COTTMAN, keep his books and records at the CENTER at all times and make them available during business hours to authorized representatives of COTTMAN for the purpose of verifying the accuracy of OPERATOR's reports. If such verification reveals that the gross receipts reported by OPERATOR to COTTMAN are more than two (2%) percent less than OPERATOR's actual gross receipts, OPERATOR shall reimburse COTTMAN for all expenses connected with such verification, including, but not limited to, reasonable accounting and legal fees, and without limitation to any other rights and remedies Cottman in its sole discretion may elect to pursue, OPERATOR shall pay to COTTMAN immediately any delinquent license fees, together with interest at the rate of eighteen percent (18%) [or the maximum rate of interest allowed by law if less than eighteen percent (18%)] per year, calculated from the date when such license fees should have been paid to the date of actual payment;

n.  use only numerically consecutive repair orders provided by COTTMAN, for which COTTMAN may make a reasonable charge;

5

o.   purchase all equipment, parts, and other supplies from COTTMAN or suppliers approved by COTTMAN, or from other suppliers whose parts and supplies conform to original equipment manufacturers' specifications or to the minimum standards of quality, performance and uniformity established from time to time by COTTMAN;

p.   participate in the national fleet accounts program as hereinafter described in section 16.a. of this Agreement; and

q.   pay the continuing license fee and all other fees and/or charges arising under this Agreement, via electronic funds transfer as hereinafter described in section 8. of this Agreement

8.   Continuing License Fees.

a.   During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing license fee (the "continuing license fee") equal to seven and one-half (7 ½%) percent of the gross business transacted by OPERATOR (as used in this section, the term "gross business" shall include all work completed and delivered to customers of the CENTER, exclusive of sales tax). The continuing license fee shall be paid weekly on each Tuesday based upon gross business transacted during the preceding calendar week.  The continuing license fee shall be remitted simultaneously together with a report showing the computation thereof upon forms or in a format,  provided by COTTMAN.  COTTMAN may, in its sole discretion, require OPERATOR to submit the reports via electronic polling from OPERATOR to COTTMAN through the internet or other electronic means which is compatible with software utilized by COTTMAN for such purpose.

b.   The continuing license fee, and all other fees and/or charges arising under this Agreement, shall be remitted to COTTMAN via electronic funds transfer ("EFT") from the designated account(s) of OPERATOR's financial institution. Prior to opening his/her CENTER, and from time to time thereafter as events may require, OPERATOR shall provide COTTMAN written authorization, and such other information as COTTMAN may require, in such form as shall be approved by COTTMAN, which shall authorize/enable OPERATOR's financial institution to accept debit originations, electronic debit entries, or other EFT, and electronically deposit fees and contributions owing COTTMAN directly to COTTMAN's bank account(s)

xi.   OPERATOR authorizes COTTMAN to withdraw funds by EFT upon or after the said funds become due to COTTMAN under this Agreement, at such days and times as COTTMAN shall,  in its sold discretion, determine.  It shall be an non curable event of default under Section 19 of this Agreement if OPERATOR closes or otherwise makes OPERATOR's designated account non accessible by COTTMAN without completing the following before or promptly after the account is made non accessible:

i.   notifying COTTMAN in wiring of such event;

xii.   establishing another designated account for EFT withdraws; and

iii.   providing the written authorization and information required in sub section b. above.

d.   In the event COTTMAN has not received by 12 noon (EST)  Tuesday a report of sales from OPERATOR for the gross business transacted during the preceding week via (i) written statements/written business reports in the form stipulated by COTTMAN under section 8. of this Agreement, and/or (ii) by electronic polling, then COTTMAN shall be entitled to withdraw by EFT from OPERATOR's designated account(s) the appropriate continuing license fee based on an arithmetic average of OPERATOR's weekly gross sales reported to COTTMAN over a number of previous weeks determined by COTTMAN in its sole discretion or based in some other means of estimating OPERATOR's gross sales determined by COTTMAN in its sole discretion.  If a gross sales report in the form of a statement required under this section 8. is subsequently received and reflects (i) that the acutual amount of the continuing license fee due was more than the amount of the EFT by COTTMAN, then COTTMAN shall be entitled to additional funds via EFT   from OPERATOR's designated account(s) for the difference or (ii) that the actual amount of the royalty and advertising contribution due was less than the amount of the EFT by COTTMAN, then COTTMAN shall credit the excess amount to the payment of OPERATOR's future continuing license fee.

e.   Upon written notice by COTTMAN to OPERATOR, OPERATOR may be required to pay any amount(s) due under this agreement directly to COTTMAN by check or other non-electronic means in lieu of EFT at COTTMAN's sole discretion.

6

xiii.    Advertising.

a.   During the term of this Agreement, OPERATOR shall pay to COTTMAN a continuing advertising fee (the "continuing advertising fee") in the amount of Six hundred seventy five dollars ($675.00) per week or such other adjusted amount as may be determined from time to time pursuant to Section 9.d. of this agreement payable at the same time and in the same manner (i.e., via EFT) as set forth in Section 8 of this Agreement.

b.   The continuing advertising fee shall not be used for general operating expenses of COTTMAN, but  shall be used and expended for media costs, commissions, fees, production costs, development costs, and other costs of all advertising which is published, broadcast, displayed, or otherwise disseminated, including via any electronic means such as the internet or telephone, either during the calendar year within which such continuing advertising fee is received by COTTMAN or during the immediately succeeding calendar year. COTTMAN may, in its sole discretion, suspend the placement of advertising for OPERATOR and/or suspend or redirect OPERATOR's telephone service for any telephone numbers advertised or disseminated to the public in connection with Cottman trademarks or for any other telephone numbers listed on Exhibit "C", if any payments due COTTMAN under this Agreement or any other agreement in effect between the parties are not paid on the date upon which the payments are due. The suspension  may continue until OPERATOR has paid current all monies owed COTTMAN. OPERATOR is not relieved of any obligation to make continuing advertising fee payments during the term of any suspension.  In the event advertising is suspended, COTTMAN, in its sole discretion, may apply advertising fees paid during the period of suspension toward any late fees, claims, invoices or other monies owed COTTMAN from OPERATOR.  During the term of any suspension OPERATOR shall be prohibited from placing advertising pursuant to paragraph 9.e.

c.   All decisions from time to time regarding whether to utilize national, regional, or local advertising, or some combination thereof, and all decisions regarding selecting of the particular media, including electronic media such as the internet, and advertising content, shall be within the sole discretion of COTTMAN and such agencies or others as it may appoint, provided however, that except for those amounts utilized for national advertising or as set forth in section 9. b. above, all monies actually received from OPERATOR shall be spent for the local or regional market area of the CENTER.

d.   The continuing advertising fee may be adjusted from time to time either nationally or by region or market area in Cottman's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) in any calendar year, and provided further that no adjustment shall be deemed retroactive to any prior year.

e.   Provided OPERATOR's advertising is not suspended by Cottman, nothing herein shall be deemed to prohibit OPERATOR from engaging in any advertising or promotion of his CENTER or business, in addition to the advertising or promotion paid for by COTTMAN.  Provided such advertising or promotion shall be at the sole cost of OPERATOR and without deduction or credit against any fees or other monies owed by OPERATOR to COTTMAN, and shall be subject to the provisions of section 9.f. of this Agreement, except that under no circumstances shall OPERATOR (1) create, maintain or use a website or other form of electronic media not paid for or approved in writing by COTTMAN for the purpose of advertising or promoting his CENTER or business; (2) create or adopt any domain name utilizing in any way the Cottman names and marks; and (3) establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home page(s) or other part of its website(s);

f.   OPERATOR shall not use, display, publish, broadcast, or in any manner disseminate any advertising or promotional material unless the same has been first approved in writing by COTTMAN. In the event that COTTMAN from time to time furnishes to OPERATOR any advertising, promotional or informational materials to be used, displayed, or distributed in or about CENTER, OPERATOR agrees to follow the instructions of COTTMAN in connection therewith; and

g.   In accordance with section 9.c. of this Agreement, COTTMAN may from time to time designate a COTTMAN website for the purpose of advertising the COTTMAN names and marks and services associated with the SYSTEM as well as individual CENTERS.   OPERATOR acknowledges that all parts of the designated website, including any web page(s) dedicated to his CENTER, are the property of COTTMAN and that COTTMAN has sole and exclusive right and authority to change or terminate the website in total or in part as COTTMAN, in its sole discretion, deems appropriate.

10.  Insurance.

    a.  OPERATOR shall purchase and at all times during the term of this Agreement shall maintain in full force and effect policies of insurance as follows:

        xiv.     Workmen's Compensation insurance, in amounts prescribed by law;

        ii.  insurance against all types of public liability including employer's liability insurance, liability insurance under either a comprehensive general liability policy or an occurrence basis or a garage liability policy, with bodily injury and property damage liability insurance, products liability or completed operations liability insurance, automobile liability insurance, including owned and non-owned hired cars, trucks, trailers and other motor vehicles, and customer automobile liability insurance;

        iii.  such additional insurance as may be required by the terms of any lease for the premises of the CENTER.

    b.  All policies of insurance required under this section shall be in form and in such amounts as COTTMAN shall reasonably determine with companies reasonably satisfactory to COTTMAN and shall protect, as named insureds, OPERATOR, COTTMAN and any other party designated by COTTMAN. All such policies shall contain an endorsement which provides that only actual notice to insured, if an individual, or to any executive officer of insured, if a corporation, shall constitute knowledge of the insured. OPERATOR shall furnish COTTMAN, any other named insured, and all other persons designated by COTTMAN, certificates issued by each of OPERATOR's insurers indicating that all required insurance is in full force and effect and will not be terminated or changed without at least thirty (30) days prior written notice from the insurer to each certificate holder. New certificates evidencing renewal of such insurance shall be furnished at least thirty (30) days prior to the date of expiration of each such policy. Within five (5) days of any request by COTTMAN, OPERATOR shall deliver the original of all such insurance policies to COTTMAN for examination.

    c.  If OPERATOR fails to obtain or maintain any insurance policy containing all the coverages, clauses and provisions required under this section, COTTMAN may, at its election, obtain and maintain said insurance for and in the name of OPERATOR. Within fifteen (15) days of any written request of COTTMAN, OPERATOR shall furnish all information necessary to obtain and maintain such insurance and shall pay all costs thereof.

        xv.     Cottman Names and Marks and Trade Secrets.

    a.  OPERATOR hereby acknowledges the validity of the Cottman names and marks and that COTTMAN is the owner of all right, title and interest therein. OPERATOR agrees that he will use the COTTMAN names and marks in full compliance with specifications prescribed from time to time by COTTMAN and that all such usage and the good will established thereby shall inure to the exclusive benefit of COTTMAN.

    b.  OPERATOR represents and warrants that:

        xvi.     he will not contest, directly or indirectly, COTTMAN's ownership, title, right or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or contest COTTMAN's sole right to register, to use, and to license others to use such COTTMAN names and marks, trade secrets, methods, procedures and techniques and any other mark or name which incorporates the word "Cottman";

        ii.  with the exception of the use of the names and marks in the manner expressly specified and authorized under this Agreement and the registration of a fictitious name solely in connection with the operation of the CENTER, he will not use or register or attempt to use or register in OPERATOR's name or in the name of any other person or entity any name or mark, corporate name or any designation of any kind utilizing the COTTMAN names and marks, or any other materials or electronically transmitted information used in the SYSTEM; and

        iii.  he will not disclose to any person or entity except in the ordinary course of business, any data or information contained in the Operator's Manual and he will keep and maintain such data and information and other materials furnished to OPERATOR by COTTMAN as trade secrets.

    c.  OPERATOR shall not:

        xvii.     create, maintain or use a website or other form of electronic media not provided or approved in writing by COTTMAN in accordance with this Agreement containing any COTTMAN names or marks;

ii. create or adopt any domain name utilizing in any way the COTTMAN names or marks; or

iii. establish any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

### 12. Protection of SYSTEM.

If OPERATOR learns of any actual or threatened infringement or piracy of the Cottman names and marks, trade secrets, methods, procedures or techniques used in the SYSTEM (the "Infringement") or of any infringement or piracy claim made against OPERATOR by a party other than COTTMAN ("Third Party Claim"), OPERATOR shall immediately notify COTTMAN in writing of the Infringement or Third Party Claim. COTTMAN shall in the exercise of its sole discretion determine what action, if any, to take with respect to the foregoing and shall bear the expense of any such action. OPERATOR agrees to be named party and to give his full cooperation in such action if so requested by COTTMAN. If OPERATOR is named as a party in any legal proceeding brought by a party other than COTTMAN for infringement of trade names, trademarks, service marks, copyrights or trade secrets, based upon OPERATOR's use of the Cottman names and marks, any such proceeding shall be defended in the name of OPERATOR by and at the expense of COTTMAN.

### 13. Customer Warranties.

OPERATOR recognizes that it is in the mutual best interest of OPERATOR and other operators participating in the SYSTEM for COTTMAN to establish uniform guarantees and warranties for labor and parts throughout the SYSTEM. OPERATOR therefore agrees to offer customers of the CENTER such guarantees and warranties as may from time to time be prescribed by COTTMAN, and no others, and to honor customer complaints made within the applicable guarantee or warranty period arising from work performed at any other CENTER. OPERATOR acknowledges that such guarantees and warranties are made to the customer by OPERATOR and not by COTTMAN, and that COTTMAN shall not be responsible for reimbursing any CENTER for work performed by any other CENTER. OPERATOR shall be entitled to be reimbursed by the operator of the CENTER which originally guaranteed or warranted the work for the cost of any automotive supplies, accessories, replacement parts and labor performed in satisfaction of such guarantee or warranty. OPERATOR shall fully comply with all of the policies and procedures concerning intercenter warranties as set forth from time to time in the Operator's Manual, as referred to in section 6 of this Agreement.

### 14. Telephone Service.

OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate. In the event COTTMAN takes any action pursuant to this section 14, the telephone company and all listing agencies, without liability to OPERATOR may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

### xviii. Signs.

OPERATOR shall erect outside and inside signs of such size and construction as directed by COTTMAN. No other signs may be erected or used. OPERATOR acknowledges and agrees that COTTMAN shall have exclusive control of the use and display of all sign faces bearing the Cottman name or marks.

9

16. National Fleet Accounts.

a.   COTTMAN, as part of the SYSTEM, maintains various national/regional fleet accounts through a centralized billing system and provides transmission related repairs to the fleet accounts at COTTMAN designated locations at certain agreed prices ("national fleet accounts program").   OPERATOR agrees to participate in COTTMAN's national fleet accounts program or similar program(s) for as long as COTTMAN may offer the said program(s) during the term of this Agreement.

b.   COTTMAN may, from time to time and in its sole discretion, designate OPERATOR's CENTER to receive a particular vehicle under the national fleet accounts program.  In such event, OPERATOR agrees to:

xix.    accept and perform any transmission related repair work that the vehicle may require in accordance with COTTMAN published service grades;

xx.    offer and honor such warranties as are required under COTTMAN's agreement with the fleet account;

iii.  charge and accept payment for all repairs in accordance with the price agreed between COTTMAN and the fleet account for the particular type of repair, and not charge any additional fee to the end user;

iv.  complete and provide such data, reports and/or documentation as COTTMAN may require in administering the national fleet accounts program;

xxi.    pay to COTTMAN a one percent (1%) administrative fee from the total price of each fleet account repair; and

purchase and/or subscribe to any necessary hardware or software to interface with COTTMAN's centralized billing system.

c.   OPERATOR shall submit his/her billing information for all fleet account repairs through COTTMAN, who will issue payment to OPERATOR within five (5) business days of receipt of the payment from the fleet account.  Payment to OPERATOR is contingent on payment from the fleet account; COTTMAN is not a guarantor of such payment.  Payments issued to OPERATOR from COTTMAN will be net of the continuing license fee, the administrative fee and any fleet account rebill ALLOWANCE.  Further, COTTMAN may, in its sole discretion, apply the payment in whole or in part against any outstanding and unpaid continuing license fees, continuing advertising fees, claims, inter-center warranty charges, invoices or other monies owed COTTMAN from OPERATOR.

d.   The administrative fee may be adjusted from time to time in COTTMAN's sole discretion, provided, however, no such adjustment shall exceed five percent (5%) of the price of the repair.

e.   COTTMAN retains all rights to the software used in connection with the national fleet accounts program.  OPERATOR shall not directly or indirectly solicit the business of COTTMAN's fleet accounts.

f.   Any charge back from a fleet account to COTTMAN for a repair performed by OPERATOR shall be paid by OPERATOR to COTTMAN within ten (10) days of demand from COTTMAN.

17. Restrictions on Change of Ownership.

a.   All rights and interests of OPERATOR arising from this Agreement are personal to OPERATOR and except as otherwise provided in this section 17, OPERATOR shall not, without COTTMAN's prior written consent, voluntarily or involuntarily, by operation of law or otherwise, sell, assign, transfer or encumber his interest in this Agreement, and/or in the license granted hereby, or in the lease for the premises at which the CENTER is located, and any purported sale, assignment, transfer or encumbrances shall be null and void.

b.   OPERATOR may assign this Agreement to a corporation in which OPERATOR owns a majority of the voting control and equity, provided that:

xxii.    OPERATOR actively manages the corporation and continues to devote his best efforts and full and exclusive time to the day-to-day operation and development of the license and the business of the CENTER; and

10

xxiii.   the corporation is newly organized and its activities are confined exclusively to acting as a COTTMAN licensee under this Agreement; and

iii.   the corporation executes a document in such form as shall be approved by COTTMAN in which it agrees to become a party to and to be bound by all the provisions of this License Agreement to the same extent as if it were named as the OPERATOR herein; and

iv.   OPERATOR remains personally liable in all respects under this Agreement and OPERATOR and all officers, directors and stockholders of the corporation execute in form approved by COTTMAN a personal guaranty and agreement not to further transfer the stock; and

v.   all stock certificates representing shares in the corporation bear the following legend:

> The shares of stock represented by this certificate are subject to the terms and conditions set forth in a License Agreement dated *October 28*       20 *02*    , between
> James R. Wolfsgruber
>
>
> (OPERATOR) and Cottman Transmission Systems, LLC., copies of which are on file in the principal offices of OPERATOR and COTTMAN.

c.   Anything herein to the contrary notwithstanding:

i.   If OPERATOR (or if OPERATOR dies or becomes incapacitated, his personal representative) desires to sell his CENTER and receives from a fully disclosed third person a bona fide written offer to purchase his CENTER, license and interests under this Agreement or if OPERATOR desires to sell the stock of any corporation to which they have been transferred pursuant hereto, he shall give COTTMAN written notice and a copy of such offer and COTTMAN shall have the option, exercisable within thirty (30) days after receipt of such notice, to purchase such CENTER, license and interests in this Agreement or corporate stock, including the lease, on the same terms and conditions as offered by said third person provided that COTTMAN may substitute equivalent cash for any form of payment offered by said third person. If COTTMAN does not exercise its option and if such third person is of good character, reputation and financial condition and acceptable to COTTMAN, OPERATOR shall have the right for a period of ninety (90) days after the expiration of COTTMAN's option period to accept the offer and to assign OPERATOR's interests to such third person (subject to the provisions of subsection d of this section);

ii.   if OPERATOR dies and his personal representative does not desire to sell his CENTER, and if under controlling local law the deceased OPERATOR's interests in the CENTER, and this Agreement are distributable to heirs or legatees who are members of his immediate family and who otherwise would qualify as assignees under the terms of this section, then such attempted assignment by operation of law or will shall not be deemed in violation hereof, provided such heirs or legatees accept the conditions imposed in this section on otherwise permitted assignees.

d.   Consent to an assignment, sale or transfer otherwise permitted or permissible as reasonable may be refused by COTTMAN unless:

i.   all obligations of OPERATOR in connection with the CENTER are assumed by assignee, buyer or transferee;

ii.   all prior ascertained or liquidated debts of OPERATOR in connection with the CENTER are paid concurrently with the assignment, sale or transfer;

iii. OPERATOR is not in default hereunder;

iv.   assignee, buyer or transferee, prior to the effective date of the assignment, sale, or transfer, satisfactorily completes the Cottman training program required of new operators;

11

v.   assignee, buyer or transferee executes COTTMAN's then current standard License Agreement for a full term as provided therein;

vi.   OPERATOR, assignee, buyer or transferee, prior to the effectiveness of the assignment, sale or transfer, pays to COTTMAN its then current training fee and a license re-issuance fee of Six thousand dollars ($6,000) in connection with the administration and approval of such assignment, sale and re-issuance of License to buyer; and

vii.   OPERATOR and all officers, directors and shareholders of a corporate OPERATOR shall execute a general release under seal in favor of COTTMAN.

18.   Relationship of the Parties; Indemnification.

a.   The relationship between COTTMAN and OPERATOR is strictly that of a licensor and licensee and OPERATOR is an independent contractor. This Agreement does not create a joint venture, partnership, or agency and any act or omission of either party shall not bind or obligate the other except as expressly set forth in this Agreement.

b.   OPERATOR recognizes that COTTMAN has entered into this Agreement in reliance upon and in recognition of the fact that OPERATOR will have full responsibility for the management and operation of the CENTER and that the amount of profit or loss resulting from the operation of the CENTER will be directly attributable to the performance of OPERATOR.

c.   OPERATOR shall protect, indemnify and save COTTMAN harmless against any and all claims, demands, losses, damages (including punitive damages), costs, suits, judgments, penalties, expenses, and liabilities of any kind or nature arising directly or indirectly out of or in connection with the operation of the CENTER including work performed in accordance with the national fleet accounts program.

d.   Except as expressly granted herein, OPERATOR recognizes that nothing contained in this Agreement shall be construed as giving to OPERATOR or to any other person or entity, any right or interest in the Cottman names and marks, trade secrets, methods, procedures or techniques developed by COTTMAN and used in the SYSTEM. Further, nothing contained herein shall be construed as limiting COTTMAN's right, title or interest in the Cottman names and marks, trade secrets, methods, procedures and techniques which are a part of the SYSTEM or COTTMAN's sole and exclusive right to register, to use and to license others to use such names and marks, trade secrets, methods, procedures and techniques.

e.   In all public records and in his relationship with third parties as well as on letterheads and business forms, OPERATOR shall indicate his independent ownership of the CENTER and that he is a licensee of COTTMAN. OPERATOR agrees to conspicuously display both inside and outside the CENTER a notification that he is solely an independent licensee of COTTMAN.

19.   Termination.

a.   This paragraph shall apply to all License Agreements. COTTMAN, at is option, and without prejudice to any other rights or remedies which it may have hereunder, at law or in equity may terminate this Agreement:

i.   if OPERATOR fails to complete the initial training program to COTTMAN's satisfaction, this Agreement will be terminated immediately; or

ii.   immediately and without prior notice if in the sole judgment of COTTMAN, OPERATOR breaches subsection 7.a. or 7.b. of this Agreement; or

iii.   if OPERATOR is delinquent in the payment of the continuing license fee or the continuing advertising fee, or any other payment due to COTTMAN and if the default is not cured within ten (10) days after COTTMAN gives notice in writing to cure such default;

iv.   immediately and without prior notice if OPERATOR shall be adjudicated a bankrupt; if a receiver (permanent or temporary) of his property, or any part thereof is appointed by a court of competent authority; if he makes a general assignment for the benefit of his creditors; if execution is levied against his business or property; if OPERATOR abandons the CENTER or ceases its operation for a period of more than five (5) consecutive regular business days;

v.   if OPERATOR defaults in the performance of any of the other terms, conditions and obligations of this Agreement or of his lease for the premises at which the CENTER is located and if the default is not cured within thirty (30) days after COTTMAN gives notice to OPERATOR in writing to cure such default.

12

b.   This paragraph   shall apply only to Elite License Agreements.   COTTMAN or OPERATOR may terminate this Agreement by giving thirty (30) days written notice to the other, if, within one (1) year from the date hereof, OPERATOR fails to open his CENTER, as set forth in either Sections 1.c. or 3.a. of this Agreement.

c.   This paragraph shall apply only to Champion License Agreements.   COTTMAN or OPERATOR may terminate this Agreement by giving thirty (30) days written notice to the other, if,  within one (1) year from the date hereof, OPERATOR fails to open his CENTER, as set forth in either Sections 1.c. or 3.a. of this Agreement.

d.   Notwithstanding anything contained herein to the contrary, COTTMAN shall not be required to give OPERATOR notice in the case of a default hereunder or to afford OPERATOR any period within which to cure the same and COTTMAN may terminate this Agreement immediately and without prior notice on any default if, within twelve (12) months immediately preceding the occurrence of such default, OPERATOR has been given notice of any default hereunder on two (2) prior occasions, whether or not such default has been cured.

e.  If there are now, or hereafter shall be, other license agreements and/or notes, security agreements or other debt instruments in effect between COTTMAN and OPERATOR, a default by OPERATOR under the terms and conditions of this or any other of such agreements, shall at the option of COTTMAN, constitute a default under all such agreements.

20.  Effect of Termination.

Upon the termination of this Agreement for any reason, including, without limitation, termination upon the expiration of its current term by virtue of OPERATOR's failure to renew the same as provided in section 2 hereof (sometimes herein "Expiration") OPERATOR shall cease to be a COTTMAN licensee, and

a. OPERATOR agrees:

i.  promptly to pay COTTMAN all amounts owing from OPERATOR to COTTMAN;

ii.  immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service, manuals, software and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN;

iii.  thereafter to make no representations or statements that OPERATOR is or ever was in any way approved, endorsed or licensed by COTTMAN or associated or identified with COTTMAN or the SYSTEM in any manner whatsoever or that OPERATOR is a former COTTMAN OPERATOR; provided, however, OPERATOR shall honor all customer complaints made within the applicable guarantee or warranty period arising from work performed at the Center;

iv.  immediately to take all steps necessary to amend or terminate any registration or filing of any fictitious name or any other registration or filing containing the Cottman names and marks in order to effectuate the removal of the Cottman names and marks from such registration or filing; and

v.  thereafter to refrain from establishing any HTML or other link between any website created, maintained or used by OPERATOR and COTTMAN's home pages(s) or other part of its website(s).

b.  COTTMAN shall have the option to purchase all of OPERATOR's right, title and interest in the CENTER and all equipment contained therein. If COTTMAN intends to exercise its option, COTTMAN shall notify OPERATOR of such intention at the time of termination or in the case of Expiration, within ten (10) days prior to the expiration of the current term of this Agreement. The full purchase price of the CENTER shall be:

i.  in the case of Expiration, the fair market value of the equipment and parts then located at the CENTER less all outstanding liabilities of the CENTER;

ii.  in the case of all other terminations, the lesser of the fair market value of the equipment and parts then located at the CENTER or OPERATOR's cost, less depreciation on the equipment computed on a ten (10) year straight line basis, less all outstanding liabilities of the CENTER. COTTMAN shall have the right to withhold from the purchase price funds sufficient to pay all outstanding debts and liabilities of the CENTER and to pay such debts and liabilities from such funds. If such liabilities exceed the purchase price of the equipment and parts, COTTMAN shall apply the purchase price in such manner as COTTMAN, in its own discretion, shall determine. In no event, however, shall COTTMAN become liable for any of the debts and liabilities

13

of OPERATOR or the CENTER and OPERATOR shall remain responsible for all outstanding debts and liabilities of the CENTER which remain unsatisfied subsequent to the distribution by COTTMAN of the purchase price funds;

      iii. "Fair Market Value" as used in this section 20, shall be determined by an appraisal from an independent third party acceptable to COTTMAN. The costs of such appraisal shall be borne equally by COTTMAN and OPERATOR.

      c. If, within five (5) days after termination, OPERATOR fails to remove all displays of the COTTMAN names and marks and any other materials of any kind from the CENTER which are identified or associated with the SYSTEM or COTTMAN, COTTMAN may enter the CENTER or premises to effect such removal. In such event, COTTMAN shall not have liability to OPERATOR therefor nor be accountable or required to pay for such displays or materials.

      d. If, within three (3) days after termination OPERATOR has not taken all steps necessary to amend, transfer or terminate telephone listings and service, any registration or filing of any fictitious name or any other registration or filing containing the COTTMAN names and marks, OPERATOR hereby irrevocably nominates, constitutes and appoints COTTMAN or any Prothonotary, Clerk of Court, or Attorney of any Court of Record as his true and lawful attorney for him and in his name and on his behalf to take all such action as may be necessary to amend, transfer or terminate all such telephone listings and service, registrations and filings of such fictitious name or any other registration or filing containing the COTTMAN names and marks, without liability to OPERATOR for so doing. In the event any action is required to be taken by or on behalf of COTTMAN pursuant to this subsection 19.d., the telephone company and all listing agencies, without liability to OPERATOR, may accept this Agreement and the directions by or on behalf of COTTMAN as conclusive of the exclusive rights of COTTMAN in such telephone numbers and directory listings and its authority to direct their amendment, termination or transfer.

      e. Termination of this Agreement shall not affect, modify or discharge any claims, rights, causes of action or remedies, which COTTMAN may have against OPERATOR, whether under this Agreement or otherwise, for any reason whatsoever, whether such claims or rights arise before or after termination.

      f. OPERATOR hereby irrevocably authorizes COTTMAN to enter upon and take possession of the CENTER and to take in the name of OPERATOR, all other actions necessary to effect the provisions of this section, and any such entry or other action shall not be deemed a trespass or other illegal act, and COTTMAN shall not be liable in any manner to OPERATOR for so doing.

      21. Covenant Not to Compete.

      OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants:

      a. Except for the business contemplated by this Agreement, during its term OPERATOR shall not engage in any business the same as, similar to, or in competition with any CENTER, COTTMAN or the SYSTEM.

      b. For a period of two (2) years after the termination of this Agreement for any reason, OPERATOR shall not:

      i. within a radius of ten (10) miles of OPERATOR's former CENTER and three (3) miles of any other CENTER in operation at the time of termination or any CENTER that has commenced operation during said two (2) year period, begin or engage in any business the same as, similar to or in competition with such CENTER; or

      ii. within the territorial boundaries of the United States, Canada, Puerto Rico, Australia, and the Virgin Islands, as a licensor, franchisor, or similar organization, engage in any business, the same, similar to, or in competition with, COTTMAN or the SYSTEM.

      c. As used in subsections 21.a. and 21.b. above:

      i. "engage in" shall include, but not be limited to, activities whether direct or indirect, as an individual proprietor, partner, stockholder, director, officer, lessor, principal, broker, agent, employee, consultant, lender or otherwise; and

      ii. "in competition with" shall include, but not be limited to:

I:\MIRIAM\FL93002LA.DOC

(a) the request of any present or future supplier, customer or operator of a CENTER to curtail or cancel its business relationship with any CENTER, COTTMAN or the SYSTEM,

(b) the disclosure of the identity of any past, present or future customer, supplier or operator of any CENTER, and

(c) the solicitation, canvassing or the authorization of any other person to solicit or canvass any past, present or future customer, supplier or operator of a CENTER.

As used in this subsection 21.c.ii., "future supplier, customer or operator" shall mean a supplier, customer, or operator who will have had a business relationship with a CENTER, COTTMAN or the SYSTEM during the term of this Agreement or during a period of one (1) year following the termination of this Agreement.

d.   OPERATOR shall not at any time, directly or indirectly, divulge, furnish or make accessible to any person or entity financial or confidential information, trade secrets, methods, procedures, or techniques of any kind relating to any aspect of the operations of the CENTER, COTTMAN or the SYSTEM.

e.   OPERATOR acknowledges that in view of the nature of the SYSTEM and the business of COTTMAN, the restrictions contained in this section 21 are reasonable and necessary to protect the legitimate interests of the SYSTEM and COTTMAN and that any violation of such restrictions will result in irreparable injury to the SYSTEM or COTTMAN. Therefore, OPERATOR acknowledges that, in the event of such violation, COTTMAN shall be entitled to preliminary and permanent injunctive relief and damages as well as an equitable accounting of all earnings, profits, and other benefits arising from such violation, which remedies shall be cumulative and in addition to any other rights or remedies to which COTTMAN shall be entitled, and the arbitration provisions of section 21 shall not apply to any equitable proceeding seeking enforcement of the provisions of this section 21. If OPERATOR violates any restriction contained in this section 21, and it is necessary for COTTMAN to seek equitable relief, the restrictions contained herein shall remain in effect until two (2) years after such relief is granted.

f.   OPERATOR agrees that the provisions of this covenant not to compete are reasonable. If, however, any court should hold that the duration or geographical limits of any restriction contained in this section 21 are unreasonable, the parties agree that such determination shall not render the restriction invalid or unenforceable but that such restriction shall remain in full force and effect for such duration and within such geographical limits as the court shall consider reasonable.

22. Arbitration.

Any controversy or claim arising out of or relating to this Agreement may, by agreement, be settled by arbitration in the City of Philadelphia, Pennsylvania by a panel of three (3) arbitrators (the "arbitrators") in accordance with the rules of the American Arbitration Association then in effect. The decision of the Arbitrators shall be final and binding on the parties and judgment upon the award rendered by the Arbitrators may be entered in any court having jurisdiction. Each party shall be responsible for the payment of his or its legal expenses and the fees and expenses of arbitration except that the Arbitrators shall be paid by the losing party. The Arbitrators shall have no authority to alter or modify any provision of this Agreement or to render an award which by its terms results in such an alteration or modification.

23. Expenses

a.   In addition to the payment of the continuing license fee set forth in section 8 hereof, and the continuing advertising fee in section 9 hereof, OPERATOR agrees to pay all costs incurred by COTTMAN in collecting such fees and all other payments due hereunder and incurred in enforcing the provisions of this Agreement, including but not limited to, the cost of all telephone calls, telegrams, travel, legal expenses and correspondence.

I:\MIRIAM\FL93002LA.DOC

b. OPERATOR shall pay COTTMAN a late charge upon all amounts due and owing to COTTMAN in an amount equal to one and one-half percent (1-1/2%) of the average unpaid balance per month. If the late charge violates any usury or similar law, then the late charge will instead be the maximum amount allowed under applicable law. In addition, for each gross weekly business report not received by COTTMAN within two (2) weeks from the date on which it was due, OPERATOR shall pay COTTMAN a late charge of ten dollars ($10.00) per report, per week.

c. OPERATOR is responsible for paying all service charges and other fees resulting from OPERATOR's financial institution in connection with EFT including, without limitation, any and all service charges and other fees arising in connection with any EFT by COTTMAN not being honored or processed by OPERATOR's financial institution for any reason. Further, OPERATOR shall pay COTTMAN a Fifty dollar ($50.00) charge for reprocessing any EFT not originally honored or processed by OPERATOR's financial institution.

### 24. Waiver.

Waiver by COTTMAN or OPERATOR of any violation or default hereunder shall not alter or impair either party's right with respect to any subsequent violation or default nor shall any delay or omission on the part of either party to exercise any right arising from such violation or default alter or impair such party's rights as to the same or any future violation or default. An acceptance by COTTMAN of any payment from the OPERATOR after the date on which such payment is due shall not operate as a waiver of OPERATOR's default or violation hereunder nor alter or impair COTTMAN's rights with respect to such violation or default.

### 25. Successors.

Except as otherwise specifically set forth in this Agreement, this Agreement shall inure to and be binding upon the parties hereto, their respective heirs, executors, administrators, successors and assigns. COTTMAN shall have the right to assign its rights and interests under this Agreement, provided that the assignee shall agree in writing to assume all obligations undertaken by COTTMAN hereunder. Such assignment shall discharge COTTMAN from all other obligations as set forth in this Agreement.

### 26. Notice.

Every notice under this Agreement shall be in writing and delivered personally or by registered or certified mail, return receipt requested, addressed to the party to whom it is directed at the address hereinabove set forth or at such other address as one party shall provide to the other in writing. All notices shall be effective when deposited, postage prepaid, in the mail and the return receipt shall be conclusive evidence thereof.

### 27. Risk of Operations.

OPERATOR recognizes the uncertainties inherent in all business ventures. OPERATOR agrees and acknowledges that, except as specifically set forth in this Agreement, no representations or warranties, express or implied have been made to OPERATOR, either by COTTMAN or anyone acting on its behalf or purporting to represent it, including, but not limited to, the prospects for successful operations, the level of business or profits that OPERATOR might reasonably expect, the desirability, profitability or expected traffic volume or profit of the CENTER (whether or not COTTMAN assisted OPERATOR in the selection of the location of the CENTER), the costs of equipping or the amount or type of equipment necessary or appropriate to the operation of the CENTER or as to the quality of any products or services to be sold by OPERATOR to its customers hereunder. OPERATOR acknowledges that all such factors are necessarily dependent upon variables beyond COTTMAN's control, including without limitation, the ability, motivation and amount and quality of effort expended by OPERATOR.

### 28. Severability.

If any portion of any section of this Agreement shall conflict with the applicable provisions of Federal, State or local law, the conflicting portion shall be construed in accordance with the specific provisions of the applicable law, and the remaining portion of said section, as well as the remainder of this Agreement, shall remain in full force and effect.

I:\MIRIAM\FL93002LA.DOC

29.  Jurisdiction, Venue and Controlling Law.

This Agreement and all related agreements have been entered into in the Commonwealth of Pennsylvania and any matter whatsoever which arises out of or is connected in any way with the Agreement or the franchise shall be governed by and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania.

a.  With respect to any legal proceedings arising out of or connected in any way to this Agreement or the franchise, OPERATOR and COTTMAN consent to the jurisdiction and venue of any court of general jurisdiction of Montgomery County, Pennsylvania or the United States District Court for the Eastern District of Pennsylvania, and any legal proceedings arising out of this Agreement shall be brought only in such courts and the parties further agree that the mailing (by certified mail, return receipt requested) to such party's last known address of any process shall constitute lawful and valid process.

b.  In the event OPERATOR institutes legal proceedings in any court other than those specified, he shall assume all of COTTMAN's costs in connection therewith, including but not limited to, reasonable counsel fees.

c.  Licensor's authorized agent for service of process is CT Corporation System, Inc., 1200 South Pine Island Road, Plantation, FL 33324, (305) 473-5503.

30.  JURY WAIVER

OPERATOR AND COTTMAN HEREBY AGREE THAT THEY SHALL AND HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR IN EQUITY, BROUGHT BY EITHER OF THEM, OR IN ANY MATTER WHATSOEVER WHICH ARISES OUT OF OR IS CONNECTED IN ANY WAY WITH THIS AGREEMENT OR ITS PERFORMANCE.

31.  Entire Agreement.

This instrument contains the entire agreement of the parties, and supersedes, cancels, and revokes any and all other agreements between the parties relating to the subject matter of this Agreement. There are no representations or warranties, either oral or written, except those contained in this Agreement. Except as set forth in Section 6.c., this Agreement may be modified only by an agreement in writing signed by the party against whom enforcement of such modification is sought.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal on the date first above written.

WITNESS:

COTTMAN TRANSMISSION SYSTEMS, LLC.

BY: _____(SEAL)
Todd P. Leff, President
OPERATOR:

_____
WITNESS:

_____(SEAL)
James R. Wolfsgruber

I:\MIRIAM\FL93002LA.DOC

## AMENDMENT TO LICENSE AGREEMENT

WHEREAS, COTTMAN TRANSMISSION SYSTEMS, LLC, as Licensor, and James R. Wolfsgruber, as Operator, have entered into a License Agreement dated October 28, 2002, for a Cottman Center to be located in Florida; and

WHEREAS, all parties hereto desire to change the location to 1410 West New Haven Avenue, West Melbourne, Florida 32904.

NOW, THEREFORE, for good and valuable consideration, the sufficiency and mutual receipt of which is hereby acknowledged by all parties, and for the mutual promises contained herein and intending to be legally bound hereby, Licensor and Operator agree as follows:

1.  That certain License Agreement, dated October 28, 2002, is hereby amended to change the location from Florida to 1410 W New Haven Avenue, West Melbourne, Florida 32904.

2.  All of the other terms, covenants and conditions of the License Agreement shall remain unchanged and in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment to License Agreement under seal this 9th day of April , 2003.

WITNESS:

_____

WITNESS:

COTTMAN TRANSMISSION SYSTEMS, LLC.

BY:_____ (SEAL)
       Todd P. Leff, President

_____

_____ (SEAL)
James R. Wolfsgruber

WITNESS:

_____

_____ (SEAL)



## APPENDIX C

Date_____

This will acknowledge that the following telephone numbers (and any others that may be subsequently used or established at my Cottman Transmission Center) are the property of Cottman Transmissions Communications Corp. and may be used at my Cottman Transmission Center located at

**1410 West New Haven Avenue, West Melbourne, FL 32904**
**Subject to the terms of the Cottman License Agreement:**

**321 768 7665**

any and all "roll-over" numbers and any numbers hereafter acquired for use at my Cottman Center.

I hereby acknowledge that any telephone numbers used at my Cottman Transmission Center will appear under Cottman's trademark in directory listings, advertising and yellow pages advertising. I hereby grant to Cottman Transmission Communications Corp., and/or Cottman Transmission Systems, LLC the irrevocable right to have any such telephone numbers removed, transferred, or suspended, from the aforementioned location in accordance with the terms of the Cottman License Agreement or in the event of the termination, rejection or recision of the Cottman License Agreement for any reason whatsoever. I acknowledge that I may not make any service order changes to these numbers including, but not limited to, change of authorized parties, change of local or long distance providers, and termination or transfer of such telephones, and that any such changes to the account shall be null and void.

WITNESS:                                    LICENSEE:

_____                       _____
                                            James R. Wolfsgruber

WITNESS:                                    LICENSEE:

_____                       _____

WITNESS:                                    JRW, Inc.

_____                       BY:_____
                                               President

Apr 09 03 01:06p     Barbara Wolfsgruber        7722990557        p.3

APR-09-2003 WED 10:34 AM   Case 2:08-cv-00369-LKC   Document 1-1   Filed 01/24/08   Page 23 of 24   P. 03
FAX NO.



## TRANSFER OF LICENSE TO A CORPORATION

The undersigned, an officer, director and owner of a majority of the issued and outstanding voting stock of the corporation set forth below and OPERATOR of a COTTMAN Transmission Center under a License Agreement executed on the date set forth below between himself and Cottman Transmission Systems, LLC (COTTMAN) granting him a license to operate the CENTER at the location set forth below and the other undersigned directors, officers and shareholders of the corporation, who together with OPERATOR constitute all of the shareholders of the corporation, in order to induce COTTMAN to consent to the assignment of the License Agreement to the corporation in accordance with the provisions of Section 17of the License Agreement agree as follows:

1. The undersigned OPERATOR shall remain personally liable in all respects under the License Agreement and all the other undersigned officers, directors and stockholders of the corporation, intending to be legally bound hereby, agree jointly and severally to be personally bound by the provisions of the License Agreement, specifically including the restrictive covenant contained in Section 2 hereof, to the same extent as if each of them were the OPERATOR as set forth in the License Agreement and they jointly and severally personally guarantee all of the OPERATOR's obligations set forth in said Agreement.

2. The undersigned agree not to transfer any stock in the corporation without the prior written approval of LICENSOR and agree that all stock certificates representing shares in the Corporation shall bear the following legend:

> The shares of stock represented by this certificate are
> subject to terms and conditions set forth in a License
> Agreement dated October 28, 2002, between
>
> James R. Wolfsgruber
>
> (OPERATOR) and Cottman Transmission Systems, LLC
> copies of which are on file in the principal offices of
> OPERATOR and Cottman.

3. James R. Wolfsgruber shall devote his best efforts and full and exclusive time to the day-to-day operation and development of the License and the business of the Center.

4. JRW, Inc. hereby agrees to become a party to and to be bound by all the provisions of the License Agreement executed on the date set forth below between OPERATOR and COTTMAN to the same extent as if it were named as the OPERATOR therein.

Date of License Agreement: October 28, 2002

Location of Center:  1410 W New Haven Avenue, West Melbourne, Florida 32904

WITNESS:

_____        _James R. Wolfgruber_____(Seal)
                                        James R. Wolfgruber

WITNESS:

_____        _____(Seal)

WITNESS:

_____        _____(Seal)

Attest:

_____        By: _James R. Wo_____(Seal)
        Secretary                              President
        (Corporate Seal)
                                        By: _____(Seal)
                                              Vice President

                                        By: _____(Seal)
                                              Secretary

                                        By: _____(Seal)
                                              Treasurer

In consideration of the execution of the above agreement, Cottman Transmission Systems, LLC hereby consents to the
above assignment on this    9th    day of    April    2003 .

                    COTTMAN TRANSMISSION SYSTEMS, LLC
                    By: _____(SEAL)
                        Todd P. Leff, President