IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COTTMAN TRANSMISSION SYSTEMS, LLC | : | CIVIL ACTION |
|         **Plaintiff** | : | |
| | : | |
|    VS. | : | |
| | : | |
| JAMES R. WOLFSGRUBER and JRW, INC. | : | |
|         **Defendants** | : | NO. 08-0369 |

CARACAPPA, J.                                                                June 30, 2008

## MEMORANDUM OPINION

### 1. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Cottman Transmission Systems, LLC (hereinafter, "Cottman") filed a complaint in this matter against Defendants, James R. Wolfsgruber, and JRC, Inc. (hereinafter, "Wolfsgruber") alleging causes of action for trademark infringement, breach of contract, unfair competition, and seeking declaratory judgment that Cottman properly terminated Wolfsgruber's Licence Agreement for cause.

At the time of filing the complaint, Cottman also filed a Motion for Injunctive Relief against Wolfsgruber. Cottman has a franchise relationship with Wolfsgruber whereby Cottman is the franchiser and Wolfsgruber is the franchisee. Cottman asserts that Wolfsgruber continues to operate a transmission repair business as a Cottman Transmission Center at 1190 S. Wickham Road, West Melbourne, Florida, despite the fact that Wolfsgruber's License Agreement with Cottman has been terminated.

1

Cottman and Wolfsgruber entered into a license agreement on October 28, 2002 in which Wolfsgruber was authorized to use the name "Cottman" in connection with the operation of an automotive transmission repair center.[1]

Subsequent to the License Agreement, Cottman asserts that Wolfsgruber failed to pay continuing fees due under the agreement and accumulated a substantial balance owed to Cottman. See Allen Sinclair Aff., para. 16. In a letter dated June 26, 2007, Cottman informed Wolfsgruber that he was in breach of the license agreement for failing to pay sums owed. (See Exhibit "B" attached to the Motion for Preliminary Injunction). The letter stated that Wolfsgruber was given a 10-day cure period. Cottman contends that Wolfsgruber refused to cure and refused to pay monies owed under the agreement. On November 26, 2007, Cottman again placed Wolfsgruber on notice that he was in breach of the agreement for failing to pay sums due under the License Agreement. Cottman asserts further that Wolfsgruber again refused to comply, and in a letter dated January 3, 2008, Cottman informed Wolfsgruber that the License Agreement had been terminated and demanded him to comply with the post termination provisions of the agreement.[2] (See Exhibit "D" attached to Motion for Preliminary Injunction).[3]

---

[1] The repair center was originally located at 1410 West Haven Avenue, Melbourne, Florida, but was later relocated to 1190 S. Wickham Road, W. Melbourne, Florida. In addition, at the time of executing the License Agreement, such agreement was assigned to defendant, JRW, who agreed to assume all obligations of Wolfsgruber. Under such agreement, Wolfsgruber would remain personally liable to Cottman under the terms of the Licence Agreement.

[2] As will be discussed, infra, Wolfsgruber has not disputed any of these assertions.

[3] Section 20 of the License Agreement provides in part that Wolfsgruber agrees:

". . . immediately to discontinue the use of all Cottman names and marks, signs, structures, forms of advertising, telephone listings and service manuals, software and all materials and products of any kind which are identified or associated with the SYSTEM or COTTMAN and to return all such materials and products to COTTMAN."

In this Motion for a Preliminary Injunction, Cottman not only asks this court to enjoin Wolfsgruber from continuing to hold himself out as a Cottman franchise by use of the Cottman name, marks, and signs, but also to relinquish its business telephone number and to shut its transmission repair business down immediately pursuant to the provisions stated below of the License Agreement.

Section 14 of the License Agreement entitled "Telephone Service" states in part:

"OPERATOR acknowledges that all telephone numbers and directory listings for the CENTER are the property of COTTMAN and that COTTMAN has the sole and exclusive right and authority to transfer, terminate and amend such telephone numbers and directory listings as COTTMAN, in its sole discretion, deems appropriate."

Section 21 of the License Agreement provides in part that:

"OPERATOR acknowledges that as a participant in the SYSTEM, OPERATOR will receive confidential information and materials, trade secrets, and the unique methods, procedures and techniques developed by COTTMAN. Therefore, to protect the SYSTEM and COTTMAN and to induce COTTMAN to grant to OPERATOR the license as set forth herein, OPERATOR represents and warrants. . . For a period of two (2) years after the termination of this Agreement for any reason, OPERATOR shall not . . . within a radius of ten (10) miles of OPERATOR's former CENTER and three (3) miles of any other CENTER in operation at the time of termination of any CENTER . . . begin or engage in any business the same as, similar to or in competition with such CENTER."

(See Exhibit "A," attached to the Motion for Preliminary Injunction).

Cottman contends that notwithstanding the termination of the License Agreement, Wolfsgruber continues to hold himself out as an authorized Cottman franchise and use Cottman's name, marks, signs, forms of advertising, and telephone listings, and continues to operate his business as a transmission repair facility. In addition, Cottman asserts that Wolfsgruber continues to refuse to turn over to Cottman the telephone number, (321) 768-7665, which number links to

former and current local Yellow page ads for Cottman Transmission. Cottman states that customers who consult their local Yellow Pages ads for the Cottman Transmission Center nearest them are unknowingly being directed to Wolfsgruber's competing transmission business.

We held a hearing and heard argument in this matter on April 22, 2008.

## 2. APPLICABLE LAW

<u>Pappan Enterprises, Inc. V. Hardee's Food System, Inc.</u>, 143 F.3d 800 (3d Cir. 1998) reiterated the well-established standard for the grant of a preliminary injunction in this circuit. The Court held that:

> "When ruling on a motion for preliminary injunctive relief, a district court must consider four factors: (1) the likelihood that plaintiff will prevail on the merits at final hearing: (2) the extent to which plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest." <u>Id.</u> at 803.

All four factors should favor preliminary relief before an injunction should issue. <u>Opticians Ass'n of America v. Independent Opticians of America</u>, 920 F. 2d 187, 192 (3d Cir. 1990).

It must first be noted that Wolfsgruber in his answer to Cottman's Motion for a Preliminary Injunction sets forth no defense and/or argument that he should still be able to hold his business out to the public as a Cottman franchise, and that such an injunction should not be granted. In his answer, Wolfsgruber only asserts that Cottman has an "identical" action pending in Montgomery County, Pennsylvania, and that it is improper to file two actions in two courts on the same issue. <u>Spinelli v. Maxwell</u>, 243 A.2d 425 (Pa. 1968); <u>Turner v. Crawford</u>, 449 F.3d 542

4

(3d Cir. 2006).

We reject this argument for several reasons. First, Wolfsgruber fails to set forth in his brief why the two actions are "identical," and merely cites the two cases above. We, however, have reviewed these two cases and find that they do not apply to the instant matter. A review of <u>Turner</u> indicates that the court held that the federal court action in that case was barred by the doctrine of res judicata, and such doctrine does not apply here. In order to apply the doctrine, the two actions must share four conditions: "(1) the thing sued upon or for; (2) the cause of action; (3) the persons and parties to the action; and (4) the capacity of the parties to sue or be sued." <u>Turner</u> at 548.

As of August 29, 2007, the date the state court action was filed, Wolfsgruber was a franchisee of Cottman and such action was a simple collection suit seeking money damages based upon Wolfsgruber's failure to pay certain fees under the License Agreement. Alan Sinclair, Vice President of Operations for Cottman testified at the hearing that as of November 27, 2007, Wolfsgruber owed up to thirty-seven thousand dollars ($37,000.00) in back fees (N.T. at 16). The instant action, however, seeks injunctive relief and statutory damages flowing from the alleged continuing wrongful conduct of Wolfsgruber subsequent to the alleged justified termination of the License Agreement. In addition, the instant action had not yet arisen at the time of the state court action because it was not until January 3, 2008 that Cottman asserts in their federal lawsuit that the License Agreement was terminated and Wolfsgruber continues to operate as a Cottman franchise.

Wolfsgruber also argues in his answer that there is an arbitration provision in the License Agreement in which Cottman is bound to by contract. However, such provision clearly

states that the parties are not bound to go to arbitration, but only <u>may</u> agree to arbitrate their disputes (emphasis added).  Section 22 of the License Agreement states in relevant part:

> "Any controversy or claim arising out of or relating to this Agreement <u>may</u>, by agreement, be settled by arbitration in the City of Philadelphia, Pennsylvania by a panel of three (3) arbitrators (the "Arbitrators") in accordance with the rules of the American Arbitration Association then in effect" (emphasis added).

Likewise, Wolfsgruber offered little in the way of testimony in his defense at the hearing before us as to why a preliminary injunction should not be granted for much of what Cottman is asking for in the way of relief.  We will now discuss the four criteria to be considered under <u>Pappan</u>.

### A. <u>Likelihood That Cottman Will Prevail</u>

Cottman must first demonstrate that its claim of damage from unauthorized trademark use is likely to succeed at trial.  This can be established if Wolfgruber's use of the Cottman trademark is "likely to create confusion concerning the origin of goods or services." <u>Opticians</u>, 920 F.2d at 192.  In addition, <u>Opticians</u> held that "there is great likelihood of confusion when an infringer uses the exact trademark" as the plaintiff.  <u>Id</u>. at 195, <u>S&R Corporation v. Jiffy Lube International Inc.</u>, 968 F.2d 371, 375 (3d Cir. 1992).

Here, as noted earlier, Wolfsgruber has not argued in his answer to the Motion for a Preliminary Injunction or at the oral argument before us that his business should be allowed to continue as a Cottman franchise by use of the Cottman sign, stationary, or any other Cottman mark identifying him as a Cottman franchise. Wolfsgruber only argues that he should be able to keep his current business phone number, and that he should not be shut down from continuing to

6

operate as a transmission repair business. In fact, Wolfsgruber testified at the hearing that following the termination of the Licence Agreement, he took down the Cottman sign,[4] and discontinued use of anything with the Cottman name on it including boxes, letterhead, and calling cards (N.T. at 109-110). Wolfsgruber also testified that he answers his phone "Transmission Shop" and has not been holding himself out as a Cottman franchise. Alan Sinclair corroborated this portion of Wolfsgruber's testimony at the hearing. Sinclair testified that he called the phone number at issue and was directed to call a new number. Sinclair called the new number and personally spoke to Wolfsgruber who answered the phone "Transmission Shop" (N.T. 42-43).

Thus, since Wolfsgruber is already not using the Cottman trademark nor holding his business out as a Cottman franchise, the only real issue is whether Wolfsgruber's business phone number is linked to Cottman and would cause confusion on the part of a customer who called the Yellow Pages' number for a Cottman Transmission Center and gets routed to the Wolfsgruber's business. We find that it would. Wolfsgruber's phone number was listed in the local Yellow Pages as a Cottman Transmission Center, and regardless how Wolfsgruber answers his phone, a customer could easily be misled into believing he has contacted a Cottman Center.

We, thus, find that under this first prong of Pappan, it is likely that Cottman would likely succeed at trial on the merits with regards to the issue of the use of the Cottman trademark. Wolfsgruber is, thus, enjoined from operating under Cottman's registered marks. In addition, Wolfsgruber is enjoined from the use of the business phone number at issue, and will do all that is necessary to cooperate with the phone company in terminating his use of this number.

---

[4]Wolfsgruber testified further that the sign was behind his shop and broken into a "million pieces," but that he did not break the sign. Wolfsgruber stated that the ultravoilet rays in Florida are very strong and caused the sign to "just crumble" (N.T. at 109).

7

A dispute over termination of a franchise agreement does not preclude the grant of a preliminary injunctive relief enjoining the former franchise from continuing to use the franchiser's trademark. S&R Corp. V. Jiffy Lube Intern., Inc., 968 F.2d 371, 375 (3d Cir. 1992).

We are, however, not prepared at this time to find that Cottman will likely prevail at trial on the merits of the dispute between the parties as to the validity of the termination of the franchise agreement in that Cottman seeks to enjoin Wolfsgruber from operating a transmission repair business for a period of two years within a radius of ten miles of the business at 1410 West New haven Avenue, Melbourne, FL or 1190 S. Wickham Road, W. Melbourne, FL, or within three miles of any other Cottman Transmission Center. We reiterate that Wolfsgruber has chosen not to put up any defense other than a jurisdiction argument in his answer to the Motion for Preliminary Injunction. However, at the hearing, Wolfsgruber did offer some testimony that it was Cottman who breached the Franchise Agreement and that he had legitimate reasons for ceasing to pay the franchise fees. Wolfsgruber testified that Cottman had not done anything to promote and/or assist in establishing his Cottman franchise in the Melbourne, Florida area, and indicated that this was one reason he stopped paying his franchise fees.[5] Wolfsgruber testified further that Cottman did not fulfill its obligations in promoting his franchise in that they failed to advertise in any other place, including newspapers, television, and radio, other that the local Yellow Pages. Wolfsgruber stated that he was "left out there to starve" by Cottman (N.T. 116).[6]

---

[5]Kevin Gordon, Vice President of Marketing and Media for Ross Advertising, an in-house ad agency of Cottman, testified at the hearing that Cottman advertised heavily for the Melbourne Cottman Center since 2003 with direct mail, yellow pages, and online yellow pages (N.T. 82-99).

[6]Wolfsgruber's counsel also argued at the hearing that Cottman was forcing their franchises to become AMMCO, another transmission repair franchise, and apparently known

8

We are of the opinion that, at this stage in this case, not enough information about the franchise relationship between the parties is known to make a finding that Wolfsgruber wrongfully terminated the Franchise Agreement and should be enjoined from continuing his transmission repair business. We opine that more discovery is required regarding this issue in order for this court to make an informed determination. Accordingly, we will not grant a preliminary injunction at this time enjoining Wolfsgruber from continuing to operate his transmission repair business.

However, plaintiff has also filed a Motion for Judgment on the Pleadings [Document 12]. In a companion order, we deny this Motion without prejudice, particularly as there is now pending a defense motion to amend its answer. At a later time, and with the completion of more discovery, the issue of the non-compete clause can be revisited as we expect Wolfsguber to offer more information as to why he should not be enjoined from operating a transmission repair business in the Melbourne, Florida area. In addition to any future hearing, we will also be scheduling a settlement conference where both parties should be prepared to discuss possible resolution of any and all outstanding issues.

### B. Cottman's Irreparable Harm

We agree that Wolfsgruber's continued use of the Cottman trademark will cause irreparable harm to the plaintiff. As stated earlier, there really is no issue at this time that Wolfsgruber is continuing to use the Cottman trademark as he is now calling himself the

---

better nationally. Counsel asserted that Cottman was in the process or in some stage of negotiations for a merger with Cottman (N.T. 54). Alan Sinclair testified that there was not a merger, but a "transaction that took place" (N.T. 54).

"Transmission Center." We do find that Wolfgruber's continued use of his current telephone number will continue to cause irreparable harm to Cottman as customers could be confused that Wolfsgruber's business remains a Cottman franchise.

As to Cottman's irreparable harm, in Wolfsgruber continuing to operate a transmission repair business, albeit under another name, we find for the same reasons stated above that, at this time, we are unprepared to find that Cottman is suffering irreparable harm. Cottman argues that it is harmed in that it cannot pursue another Cottman franchise in the Melbourne, Fl area while Wolfsgruber stays in operation. Wolfsgruber asserted at the hearing that Cottman was not being harmed because it no longer is holding itself out as a Cottman franchise and that Cottman has presented no evidence that it has even attempted to establish another franchise in this area. Additionally, there were questions raised by the Wolfsgruber at the hearing that Cottman would not even attempt to establish a Cottman franchise in the Melbourne, Florida area since Cottman was allegedly becoming more involved with AMMCO. We recognize that a competing transmission repair business could hurt Cottman's attempt to place another Cottman franchise in this area, but we are unprepared to find that Cottman will suffer irreparable harm if Wolfsgruber's business continues to operate at this time.

### C. Defendants' Irreparable Harm

As we have discussed above, Wolfsgruber has not asserted that he will suffer irreparable harm if he cannot use the Cottman trademark. In fact, outside of the business phone number, Wolfsgruber has stated that he no longer is using any of the Cottman marks, such as its sign and letterhead (N.T. 110). However, it is apparent that Wolfsgruber will obviously suffer

irreparable financial harm if we enjoin him from continuing to run his present transmission repair business.

### D. Public Interest

Lastly, under the fourth <u>Pappan</u> criterion, we find that it is in the public interest for customers not to be confused with the business they are intending to contact and services that they wish to obtain. Thus, it is in the best interest of the public for Wolfsgruber to be enjoined from further use of any Cottman mark and the business phone number at issue. However, we do not find that it is in the public's best interest to shut down Wolfsgruber's business as we have discussed earlier. An appropriate order consistent with the above follows.

11

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COTTMAN TRANSMISSION SYSTEMS, LLC | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| JAMES R. WOLFSGRUBER and JRW, INC. | : | |
| Defendants | : | NO. 08-0369 |

## ORDER

AND NOW, this 30th day of June, 2008, upon consideration of Plaintiff, Cottman Transmission Systems, LLC's, Motion for a Preliminary Injunction (document # 4), Defendants, James R. Wolfsgruber and JRW, Inc.,'s, Answer (document # 6), and after oral argument held on April 22, 2008, it is hereby **ORDERED** that said Motion is **GRANTED IN PART** and **DENIED IN PART**. It is **ORDERED** that:

1. Defendants are enjoined from using in any manner, including without limitation, any signs, stationery, letterheads, forms, printed matter or advertising, containing the propriety marks "Cottman", "Cottman Transmission" or similar names or marks;

2. Defendants are enjoined from advertising or otherwise holding itself out to the public, directly or indirectly, as an authorized franchisee of Plaintiff or as being in any way sponsored by or connected or associated with Plaintiff;

3. Defendants are enjoined from doing anything to cause potential purchasers of repair services to believe that any services or repairs performed by the Defendants, or any

1

business with which they are associated, originate with Plaintiff or are endorsed or sponsored by Plaintiff; and

    4. Defendants are enjoined from interfering with Plaintiff's right to ownership and control of the telephone number (321) 768-7665 and any associated roll over numbers, and to take all required action to immediately cause such number(s) to be placed into Plaintiff's use and control.

It is also **ORDERED** that Plaintiff's Motion to enjoin from engaging in, directly or indirectly, the transmission repair business within ten (10) miles of 1410 West Haven Avenue, Melbourne, Fl 32904, or 1190 S. Wickham Road, W. Melbourne, Fl 32904, or within three (3) miles of any other Cottman Transmission Center is hereby **DENIED.**

It is **FURTHER ORDERED** that Plaintiff shall not be required to post a bond, or escrow account with the Clerk of Court at this time.

It is **FURTHER ORDERED** that this Order shall remain in full force and effect until further Order of this Court.

                             **IT IS SO ORDERED**

                             BY THE COURT:

                             S/ LINDA K. CARACAPPA

                             LINDA K. CARACAPPA
                             UNITED STATES MAGISTRATE JUDGE